IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **COURTNEY LOOS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:20-CV-1107-MAB |
| ) | |
| **COUNTY OF PERRY, ILLINOIS,** ) | |
| **DALLAS BIGHAM, in his official** ) | |
| **capacity as Chair of the Perry County** ) | |
| **Board, and JAMES CAMPANELLA,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendants Perry County (the "County") and Perry County Board Chair Dallas Bigham's motion to dismiss Plaintiff Courtney Loos's first amended complaint (Doc. 39). For the reasons outlined below, the motion is granted in part, denied in part, and moot in part.

### INTRODUCTION

Plaintiff Courtney Loos was a full-time public defender for Perry County, Illinois. She alleges that her salary was less than the amount required by Illinois law. She further alleges that after she reported the underpayment, her job was eliminated. On October 20, 2020, Ms. Loos filed a 12-count complaint against Perry County, Illinois; the Chairman of the Perry County Board of Commissioners, Dallas Bigham; and Perry County Circuit

Court Judge, James Campanella (Doc. 1). Ms. Loos's claims against the Defendants are as follows:

> **Count 1**: Title VII claim for sex discrimination against Perry County and Dallas Bigham in his official capacity
>
> **Count 2**: Title VII claim for retaliation against Perry County and Dallas Bingham in his Official Capacity
>
> **Count 3**: Federal Equal Pay Act claim against Perry County and Dallas Bigham in his official capacity
>
> **Count 4**: Illinois Equal Pay Act claim against Perry County and Dallas Bigham in his official capacity
>
> **Count 5**: 42 U.S.C. § 1983 claim for sex discrimination against Perry County and Dallas Bigham in his official capacity
>
> **Count 6**: 42 U.S.C. § 1983 claim for retaliation against Perry County and Dallas Bigham in his official capacity
>
> **Count 7**: 42 U.S.C. § 1983 claim for sex discrimination against James Campanella
>
> **Count 8**: 42 U.S.C. § 1983 claim for retaliation against James Campanella
>
> **Count 9**: Illinois Human Rights Act claim for sex discrimination against Perry County and Dallas Bigham in his official capacity
>
> **Count 10**: Illinois Human Rights Act claim for retaliation against Perry County and Dallas Bigham in his official capacity
>
> **Count 11**: Illinois Whistleblower Act claim for retaliation against Perry County and Dallas Bigham in his official capacity
>
> **Count 12**: Illinois Wage Collection Act claim for retaliation against Perry County and Dallas Bigham in his official capacity

The parties engaged in early settlement negotiations, during which time Ms. Loos filed a first amended complaint that modified her allegations regarding her Right to Sue

Notice from the EEOC but left the substantive allegations about her claims and the claims themselves unchanged (Doc. 30). Settlement negotiations fell through and Defendants Perry County and Chairman Bingham filed an eleven-part motion to dismiss on February 26, 2021 (Doc. 39). Ms. Loos filed a response in opposition to the motion on April 7, 2021 (Doc. 48). Defendants did not file a reply brief.

## FACTS

The following facts are taken from the First Amended Complaint and assumed as true for the purpose of this motion to dismiss. *E.g.*, *Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (citation omitted). The Court does not consider any facts Defendants set forth facts in the motion to dismiss that were not included in the complaint and/or contradict the allegations in the complaint.

Under Illinois law, Perry County is required to pay its full-time public defender at least 90% of what it paid the State's Attorney, whose salary is based on the size of the county. 55 ILL. COMP. STAT. 5/3-4007, 5/4-2001. Courtney Loos was hired as the full-time public defender for Perry County in 2016 at a salary of $90,000 per year. She alleges that her salary and that of her female predecessor did not meet the pay threshold set by Illinois law but the male State's attorney was always paid the amount required by law.

In October 2018, Ms. Loos notified the County Treasurer and Circuit Judge James Campanella that the County was underpaying her. She alleges that Judge Campanella used various tactics to get her to acquiesce to the underpayment, which she resisted. In December 2018, Perry County raised her salary to $121,169 per year. According to Ms. Loos, shortly thereafter, "Judge Campanella announced that he had decided to change

the public defender position to part-time," and he notified her that her job as full-time public defender was ending as of July 1, 2019. Ms. Loos further alleges that Judge Campanella indicated he would be dividing her job among part-time attorneys, paying each $1,500 per month. However, on July 5, 2019, the County adopted a resolution appointing Calen Campanella—a male—"Perry County Public Defender, Part Time" at a salary $10,500 per month. A form submitted to the Department of Revenue indicated that effective July 1, 2019, Calen Campanella was receiving an annual salary of $126,000. Despite these formal representations, Ms. Loos contends the County put its original plan into effect and has been paying multiple part-time public defenders $1,500 per month since July 2019. Ms. Loos further alleges that when she asked about compensation for her unused vacation time, Judge Campanella denied that she had any and the County never paid her for it.

## DISCUSSION

### A. Are Ms. Loos's claims against Dallas Bigham in his Official Capacity as County Board Chairman duplicative of her claims against Perry County?

In Part I of the motion to dismiss, Defendants argue that Ms. Loos' claims against Dallas Bigham in his official capacity in Counts 1, 2, 3, 4, 5, 6, 9, 10, 11, and 12 are duplicative of her claims against the County (Doc. 39, pp. 5–6). Specifically, they assert that a claim against Bigham in his official capacity as the County Board Chairman is the same as a claim against the County Board but, under Illinois law, the County Board is not

an entity separate and distinct from the County and therefore cannot be sued (*Id.*).[1] Chairman Bigham thus implies the County is the entity that should be sued. He argues that claims against him in his official capacity as County Board Chairman are duplicative of claims against the County (*Id.*).

Ms. Loos admits that she cannot dispute Chairman Bigham's interpretation of Illinois law but asserts she nevertheless sued both the County and the County Board (via Bigham in his official capacity) as a protective measure based on the position taken by another local county—Madison County—in another case in this district that was litigated by Ms. Loos's attorneys. *See Poshard v. Madison Cty.*, No. 3:19-CV-00324-SMY-GCS, 2020 WL 5350431 (S.D. Ill. Sept. 4, 2020). In that case, Madison County took the position during a discovery dispute that the plaintiff's suit against the County was really a suit against the County Board, and the County Board, as the legislative arm of the County, was an entity separate and distinct from the County Board Chairman and the County Board Administrator, who were the executive arm of the County and were independently elected officials rather than employees of the County. In Madison County's view, the plaintiff should have sued—as her employer—the independently elected officials in their official capacity, rather than the County itself. *Id.* at *7. In other words, according to Madison County, a claim against a county official in their official capacity is *not* the same

---

[1] Section 5-1004 of the Counties Code provides that "[t]he powers of the county as a body corporate or politic, shall be exercised by a county board" 55 ILL. COMP. STAT. 5/5-1004, and Illinois courts, as well as federal courts in Illinois, interpreting Section 5/5-1004 "have concluded that county boards are not entities, separate and apart from their respective counties, that can be sued." *Poshard v. Madison Cty.*, No. 3:19-CV-00324-SMY-GCS, 2020 WL 5350431, at *3 (S.D. Ill. Sept. 4, 2020) (collecting cases).

as a claim against the county itself, which is the opposite of what Perry County argues in the instant case. This particular issue was not definitively resolved in the *Poshard* case because the parties reached a settlement before the dispositive motions were ruled on.

The Court understands what Ms. Loos is saying and why she sued both Perry County and Dallas Bigham in his official capacity as County Board Chairman. However, here, Perry County and Chairman Bigham have not taken the position that the County and the County Board are separate and distinct entities (*see* Doc. 39; *see also* Doc. 38). Rather, in their view, the County Board is part and parcel of the County, and they both have admitted that Ms. Loos was an employee of the County (*see* Doc. 39; Doc. 38, ¶¶1, 2). Therefore, suing both Chairman Bigham in his official capacity and the County on the same claims is redundant and unnecessary. *E.g., Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016) ("[F]ederal claims . . . against the state and county officials in their official capacities . . . are the equivalent of claims against the state and county."); *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (claims against the Sheriff in his official capacity were treated as claims against Marion County itself). Counts 1, 2, 3, 4, 5, 6, 9, 10, 11, and 12 are dismissed as to Chairman Bigham and he is dismissed as a Defendant in this case. At this time, the dismissal is without prejudice. If the dismissal presents any issues down the road, the Court will entertain a motion to amend the complaint.

In light of this conclusion, the arguments in Parts II, III, IV, V, and VII of the motion to dismiss, which were made only with respect to Chairman Bigham, are moot. The arguments in Parts VI, VIII, IX, X, and XI of the motion to dismiss are likewise moot as to Chairman Bigham and will be considered only with respect to Perry County.

**B. Should Count 6 be dismissed for failure to state a claim of retaliation?**

In Part VI of the motion to dismiss, Defendants argue that Ms. Loos failed to allege facts sufficient to state a § 1983 claim for retaliation (Count 6) against Perry County (Doc. 39, pp. 8–9). Rather, she alleged that Judge Campanella took the retaliatory actions and Campanella is an elected Circuit Court Judge, not an employee of the County or Board (*Id.*).

To the extent Defendants are arguing that Ms. Loos failed to allege facts sufficient to establish vicarious liability on the part of the County, this argument is a non-starter. Claims brought pursuant to § 1983 cannot be premised on vicarious liability or respondeat superior. *E.g., First Midwest Bank ex re. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (Section 1983 "does not incorporate the common-law doctrine of respondeat superior, so a municipality cannot be held liable for the constitutional torts of its employees and agents.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)); *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor.") (quoting *Monell*, 436 U.S. at 691). Rather, in order to state a § 1983 claim against a local government unit, like Perry County, a plaintiff must allege conduct properly attributable to the county itself caused the constitutional violation. *First Midwest Bank*, 988 F.3d at 986 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)). There are three primary ways in which a plaintiff might prove that the county itself inflicted the harm: (1) the alleged unconstitutional conduct implements or executes an official policy adopted by the county's officers, (2) the unconstitutional action was done pursuant to an informal but widespread custom, and

(3) an actor with final decision-making authority within the county adopted the relevant policy or custom. *Thomas v. Martija*, 991 F.3d 763, 773–74 (7th Cir. 2021).

Here, Ms. Loos alleged that she went to Judge Campanella about her pay after she discovered it did not comply with Illinois law (Doc. 30, ¶28). He told her to "drop it" then later asked her to sign a contract agreeing to work for less than what Illinois law required and waiving the County's legal obligation (*Id.* at ¶¶29, 31). She further alleges that Judge Campanella "decided to change the public defender position to part-time" and "he said he would be dividing plaintiff's job among part-time attorneys, paying each $1,500 per month." (*Id.* at ¶34). And he was the one who notified Ms. Loos that her job was ending as of July 1, 2019 (*Id.* at ¶35). Finally, when Ms. Loos asked about compensation for her unused vacation time, Judge Campanella denied she had any, and the County did not pay her for her accrued, unused vacation time when her employment ended (*Id.* at ¶¶50–52). These allegations sufficiently imply that Judge Campanella had some sort of decision-making authority over the public defender job and therefore Ms. Loos has alleged enough to state a § 1983 claim for retaliation against the County. This portion of the motion to dismiss is denied.

C. **Are Counts 10 and 11 subject to dismissal based on the Tort Immunity Act?**

In Part VIII of the motion to dismiss, Defendants argue that the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") immunizes the County from liability on Ms. Loos's state law claims for retaliation and sex discrimination under the Illinois Human Rights Act and the Illinois Whistleblower Act (Counts 9, 10, and 11) and therefore the claims must be dismissed (Doc. 39, pp. 11–

13). The substance of Defendants' argument, however, concerns only the claims that sound in retaliation (Counts 10 and 11) and does not address the claim for sex discrimination (Count 9) (*see id.*). Consequently, the Court will consider this argument only with respect to Ms. Loos's claims for retaliation (Counts 10 and 11).

Sections 2–201 and 2–109 of the Tort Immunity Act, taken together, provide both public employees and the public employer with immunity against allegations that challenge discretionary policy determinations. 745 ILL. COMP. STAT. 10/2-109, 10/2-201; *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236–37 (Ill. 2008); *Murray v. Chicago Youth Ctr.*, 864 N.E.2d 176, 186 (Ill. 2007). That means, the public entity must establish "that the action [it] is being sued for involve[d] both the making of a policy choice and the exercise of discretion." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009) (citing *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 285 (Ill. 2003)). "Discretionary" actions are those "unique to a particular public office," while "policy" decisions are those that "require[e] a governmental entity to balance competing interests and to make a judgment call as to what solution will best serve those interests." *Valentino*, 575 F.3d at 679 (citation and quotation marks omitted).

Immunity under the Act is an affirmative defense, so the burden is on Defendants to establish the County is entitled to immunity. *Van Meter*, 799 N.E.2d at 280. The Seventh Circuit has repeatedly cautioned that courts should generally refrain from granting motions to dismiss under Rule 12(b)(6) based on affirmative defenses. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citations omitted); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *United States v. N. Tr. Co.*, 372

F.3d 886, 888 (7th Cir. 2004). Dismissal under 12(b)(6) is only appropriate when "the factual allegations in the complaint unambiguously establish all the elements of the defense" and the plaintiff has "affirmatively plead[ed] himself out of court." *Hyson*, 821 F.3d at 939 (internal quotation marks and citations omitted).[2]

As Ms. Loos points out, the Illinois Supreme Court held in *Smith v. Waukegan Park Dist.* that discretionary immunity under the Tort Immunity Act does not bar a retaliatory discharge claim (Doc. 48, p. 10).

> It is not the public entity's employee who causes the retaliatory discharge. Rather, it is the employer. Section 2–109 only grants immunity to a public entity from "an injury *resulting from an act or omission of its employee* where the employee is not liable." (emphasis in original.) Accordingly, . . . section 2–109 immunity does not apply in cases of retaliatory discharge because the employer, not the employee, ultimately causes the injury.

896 N.E.2d at 236. Defendants did not discuss *Smith* in their opening brief nor did the case law they cited to (*see* Doc. 39, pp. 11–13). They also did not file a reply brief and thus provided no authority that diverges from *Smith* or argument as to why the Court should not follow *Smith*. This is reason, in and of itself, to conclude that they failed to carry their burden of establishing the County is entitled to immunity.

But there is also another reason Defendants cannot carry their burden under the Tort Immunity Act. They are asking the Court to find immunity based on facts that are simply not pleaded in the complaint (Doc. 48, p. 10). Specifically, Defendants contend

---

[2] The proper vehicle for dismissal at the pleadings stage on the basis of an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a motion to dismiss under Rule 12(b)(6). *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015); *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 976 (7th Cir. 2013); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012)

that Judge Campanella decided to reduce the full-time public defender position to a part-time position in order to save money (Doc. 39, p. 13). They further contend the move saved the County "tens of thousands of dollars" because it was no longer obligated to pay the public defender at least 90% of the state's attorney's salary (that statutory requirement only applied to a full-time public defender) and it did not have to offer benefits to part-timers (*Id.* at p. 3). But Ms. Loos did not allege anything of the sort (*see* Doc. 30). Specifically, she did not indicate that Judge Campanella gave any reason for changing the public defender position to a part-time position (*see* Doc. 30, pp. 5–6). Rather, her complaint implies he did it because he was displeased that she insisted on a pay increase to bring her salary into compliance with Illinois law. She further alleges that after she filed an administrative charge of retaliation, the County responded by "claim[ing]" it had changed the public defender position to part-time in order to cut costs, but Ms. Loos points out that it did not actually cut any costs because the County was paying the part-time defender a larger salary than it had paid her (Doc. 30, p. 7). Thus, Ms. Loos's allegations imply the County's claim of cost cutting was an after-the-fact, pretextual justification. They certainly do not demonstrate that the decision to change the public defender position to a part-time position was a "judgment call between competing interests." Although Defendants claim that it was, determining whether the cost-saving justification was legitimate or pretextual will turn on facts, which are not before the Court at this stage in the proceedings. At this stage, the factual allegations in the complaint do not establish that the County is immunized under Tort Immunity Act and therefore dismissal of Ms. Loos's claims for retaliation under the Whistleblower Act and Human

Rights Act (Counts 10 and 11) is inappropriate.

### D. Should Counts 9, 10, and 11 be dismissed as time-barred?

In Part IX of the motion to dismiss, Defendants argue that Ms. Loos's claims against Perry County under the Illinois Human Rights Act and the Illinois Whistleblower Act (Counts 9, 10, and 11) are time-barred by the one-year statute of limitations in the Tort Immunity Act (Doc. 39, pp. 13–14).

The Tort Immunity Act provides that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a). "[T]he term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State." 745 ILCS 10/8-101(c).

It is important to note that the statute of limitations is an affirmative defense, which *Defendants bear the burden of proving.* FED. R. CIV. P. 8(c)(1). Dismissal under 12(b)(6) on statute-of-limitations grounds is only appropriate "if the claim is 'indisputably time-barred.'" *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (quoting *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)). Here, Defendants assume, without any discussion or citation to legal authority, that the one-year statute of limitations in the Tort Immunity Act applies to Ms. Loos's claims under the Whistleblower Act and the Human Rights Act (*see* Doc. 39, pp. 13–14). Their conclusory assertion is simply not enough to carry their burden of establishing that Counts 9, 10, and 11 are time-barred. *See, e.g.,* 775 ILL. COMP. STAT. 5/7A-102 (setting forth time limits regarding filing and investigating

administrative charges and filing suit under the Illinois Human Rights Act); *Williams v. Off. of Chief Judge of Cook Cty. Illinois*, 839 F.3d 617, 627 (7th Cir. 2016) ("It is unclear under Illinois law whether this statute of limitations applies to retaliatory discharge claims under the Illinois Whistleblower Act, although one appellate court seemed to suggest that it might." (citing *Taylor v. City of Chi.*, 10 N.E.3d 383, 395 (Ill. App. Ct. 2014))). Consequently, this portion of the motion to dismiss is denied.

### E. Are punitive damages available on Counts 5 and 6?

In Part X of the motion to dismiss, Defendants argue that Ms. Loos's claim for punitive damages in connection with her § 1983 claims against Perry County (Counts 5 and 6) must be dismissed (Doc. 39, pp. 14–15). This portion of the motion is granted. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 ("We hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). The claim for punitive damages in connection with the § 1983 claims against Perry County in Counts 5 and 6 is dismissed.

### F. Is Ms. Loos's § 1983 discrimination claim time-barred?

In Part XI of the motion to dismiss, Defendants argue that Ms. Loos's § 1983 claim for sex discrimination against Perry County (Count 5) must be dismissed because it is time-barred (Doc. 39, pp. 15–16). This claim is based on Ms. Loos's allegations that the County paid her less than the statutorily required amount from the time she was hired in 2016 until around December 2018, while the County always paid the male State's Attorney the statutorily required amount (Doc. 30).

Here, the parties agree that a two-year limitations period applies to the § 1983

claim for sex discrimination (Doc. 39, p. 15; Doc. 48, p. 12). *See, e.g., Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 766 (7th Cir. 2013) ("This court has consistently held that the limitations period applicable to § 1983 actions brought in Illinois is the two-year period for general personal injury actions set forth in 735 ILCS 5/13–202."). Ms. Loos filed this lawsuit on October 20, 2020 (Doc. 1). According to Defendants, the two-year statute of limitations means that Ms. Loos can only move forward on this claim with respect to her paychecks that were issued after October 22, 2018; the portion of her claim that relies on her paychecks from 2016, 2017, and early 2018 must be dismissed as time-barred (Doc. 39, pp. 15–16). Defendants go on to note that the Lilly Ledbetter Fair Pay Act of 2009 amended Title VII, the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Rehabilitation Act "to clarify that a discriminatory compensation decision occurs each time compensation is paid pursuant to the discriminatory compensation decision under those Acts but not those made under § 1983" (*Id.* at p. 16).

In response, Ms. Loos argues that the Ledbetter Act "is irrelevant" to Count 5 (Doc. 48, pp. 12–13). Specifically, she contends that the Ledbetter Act "governs timing requirements under federal statutes" but "[b]ecause § 1983's limitations stem from the state law and accompanying limitations doctrines," the Ledbetter Act "does not cover § 1983 claims" (*Id.*). She then suggests her claim involves a continuing violation, which she asserts is governed by Illinois law and was not argued by Defendants (*Id.*).

To begin with, it is not entirely clear from their brief what argument the Defendants were trying to advance in noting the Ledbetter Act. But the Court also does

not think the Ledbetter Act is "irrelevant," as Ms. Loos asserts. The Act retroactively reinstated the paycheck accrual rule for pay discrimination claims under Title VII, the ADEA, the ADA, and the Rehab Act. *Groesch v. City of Springfield*, 635 F.3d 1020, 1024 (7th Cir. 2011); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 714 (7th Cir. 2012).[3] Specifically, under the Ledbetter Act, an unlawful employment practice with respect to discrimination in compensation occurs not only when a discriminatory compensation decision is first made, but also "when an individual is *affected* by application of a discriminatory compensation decision . . . including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision . . . ." 42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added). "In other words, 'a new cause of action for pay discrimination ar[ises] every time a plaintiff receive[s] a paycheck resulting from an earlier discriminatory compensation practice'—even one that 'occurr[ed] outside the statute of limitations period.'" *Kellogg v. Ball State Univ.*, 984 F.3d 525, 529 (7th Cir. 2021) (quoting *Groesch,* 635 F.3d at 1027). Thus, Ms. Loos can rely on the initial pay-setting decision, even though it occurred outside the limitations period to seek damages for the paychecks she received reflecting that decision. It is undisputed that Ms. Loos received multiple paychecks during the limitations period, which suffice to provide a basis for a timely pay discrimination claim under § 1983.

---

[3] The Supreme Court articulated what came to be known as the paycheck accrual rule in *Bazemore v. Friday*, which provides that each paycheck an employee receives reflecting and perpetuating a prior discriminatory compensation decision is itself a fresh discriminatory act that gives rise to a new claim and a fresh limitations period. *Groesch*, 635 F.3d at 1026 (citing *Bazemore v. Friday,* 478 U.S. 385, 395 (1986) ("Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII.")); *see also Hildebrandt v. Illinois Dept. of Natural Resources,* 347 F.3d 1014, 1025–26 (7th Cir. 2003).

What Defendants really seem to be contesting is the scope of Ms. Loos's claim and how far back she can reach. They assert that she can only seek damages based on paychecks she received within the two-year limitations period prior to filing suit. But they do not cite to any legal authority to support this assertion. Ms. Loos, on the other hand, apparently thinks she can seek damages based on all of the paychecks she received after she was hired until her pay was adjusted in December 2018 because her claim involves a continuing violation, which she asserts is governed by Illinois law.

The Court is not convinced that the question of whether Ms. Loos's allegations involve a continuing violation is governed by state law. In *Heard v. Sheahan*, the Seventh Circuit discussed the nature of the continuing violation doctrine with respect to a § 1983 claim for deliberate indifference. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). The Court noted that while "[s]ome cases say that the doctrine of continuing violation is a tolling doctrine," it thought "the usual and . . . correct characterization of the doctrine of continuing violation is that it is a doctrine governing accrual." *Id.* (internal citations omitted). *Accord Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517 (7th Cir. 2019). An action under § 1983 is subject to the forum state's tolling rules, but accrual is governed by federal law. *Wilson*, 932 F.3d at 517.

In any event, Ms. Loos did not fully articulate her argument that the continuing violation doctrine applies (*see* Doc. 48, pp. 12–13), and Defendants did not speak on the issue at all (*see* Doc. 39). They simply assumed without any discussion or citation to legal authority that the continuing violation doctrine did *not* apply (*see id.*). Consequently, the Court cannot make an informed decision on the matter. As a result, Defendants have

failed to carry their burden of establishing that Count 5 is indisputably time-barred and this portion of the motion to dismiss is denied.

## CONCLUSION

The motion to dismiss filed by Defendants Perry County and Dallas Bingham (Doc. 39) is **GRANTED IN PART, DENIED IN PART, and MOOT IN PART**. It is granted as to the official capacity claims against Dallas Bigham and Plaintiff's request for punitive damages on her § 1983 claims. Counts 1, 2, 3, 4, 5, 6, 9, 10, 11, and 12 are **DISMISSED without prejudice** as to Dallas Bigham and he is **DISMISSED without prejudice** as a Defendant in this case. Plaintiff's claim for punitive damages in Counts 5 and 6 is **DISMISSED with prejudice**. The motion is **MOOT** as to all other arguments pertaining to Defendant Dallas Bigham and the motion is **DENIED** as to all other arguments pertaining to Defendant Perry County.

This matter shall proceed on Plaintiff's claims against Perry County under Title VII (Counts 1 and 2), the federal Equal Pay Act (Count 3), the Illinois Equal Pay Act (Count 4), § 1983 (Counts 5 and 6), the Illinois Human Rights Act (Counts 9 and 10), the Illinois Whistleblower Act (Count 11), and the Illinois Wage Collection Act (Count 12), as well as, Plaintiff's claims against James Campanella under § 1983 (Counts 7 and 8).

**IT IS SO ORDERED.**

**DATED: July 26, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**